Moncure, P.,
after stating the case, proceeded:
First — Did the Circuit court err in refusing to give the instruction asked for by the defendants, as mentioned in their first bill of exceptions ?
This instruction was asked for after all the evidence had been given to the jury. All the facts proved by the evidence are certified by the court in the second bill of exceptions; and though none of the evidence or facts proved are set out in the first bill of exceptions, I will consider the question as to the propriety of giving the instruction therein mentioned in reference to the facts of the case, as certified in the second bill of exceptions. So considering it, the question was not an abstract one, and could not, properly, have been refused on the ground that it was. Then, was it proper to refuse it on any other ground ?
‘ During the war, neither the law of the United States, nor any policy of their government, was in force in any part of the Confederate States not in the possession or under the control of the United States. That law and that policy, in contemplation of law, are presumed to have been, and actually may have been, unknown to the citizens of the Confederate States, who were alien enemies to the citizens of the United States, between whom all intercourse, social, commercial or otherwise, was interdicted by the laws of both countries and the law of nations; and the interdiction was enforced by the armies of both countries. The law and the policy of the Confederate States were binding on the citizens thereof, and the obligation was enforced by the power of those *11 States, which was perfectly irresistible by the citizens thereof, however much they may have been disposed to make such resistance. The power of the United States was wholly insufficient to enable such citizens to make such resistance, or to afford them any protection against the consequences of making it. According to the facts as certified, the defendants were agents of the Confederate government, to exchange tobacco with the enemy for bacon, one of the prime necessaries of life, which could not be otherwise procured; and it cannot be supposed that all the power of that government would not, if necessary, have been exerted to compel its citizens to afford all the facilities in their power to the only operation by which bacon could be procured for the use of the government, in that part of the country in which the plaintiff resided, during that period of the war in which the transaction in controversy occurred. So that, if it was not the patriotic duty of the plaintiff, as a good citizen of the government under which he lived, and which alone afforded him protection, to render any facilities he may possibly have rendered to the defendants, in regard to that transaction, he was, in contemplation of law, under the necessity of doing so. The law on this subject is so fully and clearly laid down by Judge Staples, in his opinion in the case of Newton's ex'or v. Bushong & al., 22 Gratt. 628, that it is only necessary here to refer to that case.
I will now proceed to consider the next question, which is:
Secondly — Did the Circuit court err in overruling the motion of the defendants to set aside the verdict and grant them a new trial, upon the ground that the said verdict was contraiy to law and evidence, as mentioned in their second bill of exceptions.
How, the facts proved, which are certified by the *12 court and repeated m the statement ot the case, fully sustain the contract, as set out m the declaration; and show, what is not there set out, that the defendants were acting, as represented to the plaintiff ^at they were acting, as agents of the Confederate States government, and exhibited to him the written authority under which they professed to be acting. They also show, or strongly tend to show, that the plaintiff fully complied with the contract on' his part; that he received the tobacco in his barn and took good care of it; that in consequence of the tobacco being there deposited his property was burned by the forces of the United States, whereby he sustained damage to the amount of $6,352, of which the defendants had due notice, and which they were requested to pay, but wholly failed and refused to pay to the plaintiff.
That the plaintiff’s property was burned in consequence of the tobacco having been deposited in his barn, was expressly found by the jury, who were instructed by the court, on the motion of the defendants, that “unless they should believe from the evidence that the property of the plaintiff was burned and destroyed by the forces or troops of the United States government, because the tobacco of the defendants had been stored in the houses of the plaintiff, then they must find for the defendants.” On the contrary, they found for the plaintiff; and the evidence well warranted them in so finding. It is more reasonable to believe that the property was burned because the tobacco had been deposited in the barn, than that it was burned because the plaintiff, who resided near the river, had been in the habit of entertaining at his house refugees from Maryland and Yirginia, or because the members of a signal corps of the Confederate States, stationed near his house, had frequently been at his house; or because some of Mosby’s men had been there *13 on one occasion. Such hospitalities were universally practiced by our citizens residing near the river; and if the property of every man who practiced them had been destroyed, there would have been a general destruction of all the buildings in that locality. The plaintiff had not himself been engaged in the blockade business There is not sufficient- reason for believing that the property would not have been burned, if the tobacco had not been removed and concealed by the plaintiff The plaintiff, if he was not bound as bailee, had certainly a right to try to save the defendant’s tobacco; and if the effect of his effort has been to save the tobacco, but to lose his own property, the defence that he was not bound by his contract to try to save the tobacco by removing and concealing it, comes with a very ill grace from the defendants. If he had not removed the tobacco, it would certainly have been lost by the defendants; and probably the plaintiff’s property would still have been burned; the loss of which would also have fallen on the defendants by the very terms of the contract. The plaintiff, by his act of removing the tobacco, at least saved them from one of these losses. But it was for the jury to decide the question of fact, upon the evidence; and they did expressly decide that the burning was in consequence of the tobacco having been stored in the houses of the plaintiff.
Then, the case of the plaintiff is fully made out by the facts proved. In other words, the verdict is clearly not against evidence. Is it against law ? Is there any thing in the facts proved, which shows that the plaintiff is not legally entitled to recover?
I have already shown that, considering the defendants as agents of the Confederate States government, in exchanging tobacco for bacon for the use of that government, the plaintiff might lawfully have contracted with *14 them to receive the tobacco in his barn, even though he might thereby facilitate the operation by which that exchange was sought to be effected. And the defendants must be so considered in this case, whether they were in ^ae* so or n°t > because they so represented themselves to the plaintiff, and are estopped from denying that they were such agents. Indeed they do not now deny the fact, or attempt to deny it. I deem it unnecessary to say any thing further on that subject.
But, suppose the defendants were not the agents of the Confederate States government, to exchange tobacco for bacon, and that they were engaged in an unlawful act on their own account, in carrying or attempting to carry tobacco to Maryland, to exchange it for bacon: Is there any thing in the act of the plaintiff, in receiving the tobacco in his barn, which makes the contract of the defendants, for whose benefit the act was done, unlawful, and enables them to get rid of their promise to indemnify him against loss arising from that act? Did he thereby become a pariiceps criminis in the supposed unlawful act? And does the maxim ex turpi causa non oritur actio apply to hi3 case ? I think not. He was not at all engaged in any act of running the blockade, in which the defendants may have been engaged. On the contrary, it is expressly certified as a fact proved in the cause, “that the plaintiff had not been engaged in the blockade business and of course was not engaged in this blockade business, if that was its nature. He was to derive no benefit from it. He knew nothing of it, until the defendants presented themselves at his house, near night, and requested him to permit them to deposit the tobacco, for the night, in his barn; which he refused to do, until he was assured that they were armed with the authority of the Confederate government to do the act in which they were engaged; and not then, until they *15 promised to indemnify him against all loss. He knew that whether he was in fact concerned in blockade running or not, he would be suspected of being guilty by the enemy, if the tobacco was found by them on his premises; and therefore he properly stipulated with the defendants for his indemnity by them. He afterwards removed and concealed the tobacco, both for his own benefit and that of the defendants, and especially of the defendants, who were bound for his indemnity. He hoped thereby to have saved the property of both. He did save that of the defendants, but lost his own. He did not contract to conceal the tobacco, but merely to afford it shelter and house room; which were necessary, whether the tobacco was to be used in a lawful or an unlawful purpose. It was np part of the process of “running the blockade;” of carrying the tobacco into Maryland. The defendants arrived near night at the plaintiff’s house, near the river. The river was then blocked up with ice; and the defendants wanted accommodation and shelter for themselves and their tobacco ; and the plaintiff reluctantly, on account of the danger of doing so, afforded them the hospitality which they needed, on their promise to indemnify him against loss. Did he thereby make himself a particeps eriminis ? — commit an act of turpitude, from which no action can arise, even against the defendants, at whose instance and for whose benefit the act was done? If there be any, the least, guilt on his part, is not their guilt infinitely greater, and would they not, even on that ground, be liable to the plaintiff? The plaintiff did not expect any favors from the forces of the Hnited States, if they found the tobacco in his barn; but he did expect, and had a right to expect, that the defendants would stand up to their bargain. What is it to the government — how can it be against the policy of the law, if the defendants be corn *16 pelled to comply with their contract? Suppose the plain-A xxx tiff had given a meal of victuals, or a night’s lodging, to supposed blockade runners, would that have made him a particeps eriminis f He not only did that, but he aff°r<^ec^ them shelter and a place of deposit for their tobacco which they had along with them. Hid that any more make him a particeps eriminis l Must he, of necessity, permit their tobacco to remain exposed to the weather, and be thus destroyed? We must bear in mind that there is no evidence tending to show that there was any purpose of concealment of the tobacco in view of the parties, or any other purpose than that of affording temporary shelter to the defendants and their tobacco, during the night, or until they could carry it away. We know very well, that to make a contract unlawful, as being against law or public policy, “it must be manifestly and directly so; and it is not enough that the contract is connected with some violation of the law, however remotely or indirectly.” Let it be remembered that this is not a controversy between a citizen of the Confederate States and a citizen of the United States; nor between a citizen of the Confederate States and the government, either of the Confederate States or United States; but between citizens of the Confederate States inter se ; and that the effort of the defendants is, to get rid of the obligation of their express promise, of which they have received the full benefit, upon the ground that it was contrary to the policy of a law of which they have been the chief, if not the only, violators.
I am, therefore, of opinion that the verdict is not against law, any more than it is against evidence; and that the Circuit court did not err in overruling the motion of the defendants to set it aside.
The court gave to the jury an instruction, on the motion of the plaintiff, which is embodied in the defend *17 ants second bill of exceptions. But that exception was taken only to the opinion of the court overruling the motion of the defendants for a new trial, and not to tne opinion of the court in giving that instruction. There was no exception to that instruction; and therefore it cannot be objected to, for the first time, in the appellate court. But, in fact, it is not liable to any well founded objection. It presents a case which made the defendants liable, according to what has been already said. That it proceeds further to state that the defendants, after becoming so liable, assumed to pay such damage as the plaintiff had sustained by the destruction of his property, can do no harm, if it does no good. The next and last question, is:
Thirdly — Did the Circuit court err, in overruling the demurrer to the declaration ?
This question would seem properly to be the first which should have been considered in regular order, but I thought it more convenient to consider it lastly. The declaration contains two counts, which seem not materially to vary from each other. The demurrer is general to the whole declaration, and not to each count; so that, if either be sufficient, the demurrer was properly overruled. I think both are sufficient. The declaration says nothing about the authority of the defendants, as agents of the Confederate States, to exchange tobacco for bacon ; and therefore it presents the question, whether the contract, without reference to that fact, was legal; and upon that question I have already fully expressed my opinion, that there was nothing in the contract, as stated in the declaration, which made it illegal or void. As to the addendum to the declaration, concerning which the learned counsel for the defendants seemed to be at a loss whether it was intended by the pleader to be a separate count, or what else — I do not consider it as a separate *18 count, nor that it was intended to be such. It is not accurately drawn, though it may have been intended as a common head to the two counts; and may well serve as a head to the first count, which, otherwise, seems to be without a head. The second count has a head, and is a perfect count. At all events, the addendum does no harm.
Upon the whole, I think there is no error in the judgment, and that it' ought to be affirmed.
The other judges concurred in the opinion of Mon-cure, P.
Judge Bouldin did not sit in the case; he not having been on the Bench when it was argued; but he said, he concurred in the first proposition considered by Judge Moncure.
Judgment affirmed.